UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOWHAR ALSABUR,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>AUTOZONE, INC.,<br><br>　　　　　Defendant. | Case No.  13-cv-01689-KAW<br><br>ORDER GRANTING DEFENDANT AUTOZONE, INC.'S MOTION FOR SUMMARY JUDGMENT<br><br>Dkt. No. 52 |

On January 23, 2013, Plaintiff Jowhar Alsabur filed this action against Defendant AutoZone, Inc. under the Fair Employment and Housing Act ("FEHA"), alleging that his employment was terminated because he was African American.  On May 15, 2013, Defendant filed its motion for summary judgment.  (Def.'s Mot., Dkt. No. 52.)

On July 3, 2014, the Court held a hearing, and after careful consideration of the parties' arguments, for the reasons set forth below, the Court GRANTS Defendant's Motion for Summary Judgment.

## I.    BACKGROUND

In 2005, Plaintiff Jowhar Alsabur began working for AutoZone as a Parts Sales Manager at Store No. 5317 in Fresno, California. (Dep. of Jowhar Alsabur, "Alsabur Dep.," Decl. of Kathryn Weeks, Dkt. No. 52-5, Ex. 13 at 26:1-3, 58:18-2.)

In May 2007, District Manager Josh Hughes transferred Plaintiff to Store No. 5311 in Richmond, California, to serve as Store Manager.  In early 2009, Plaintiff was transferred from Store No. 5311 to Store No. 5229 in Oakland, California, a "hub" store, to serve as Store Manager. (Alsabur Dep. 77:20-78:19, 86:4-20.)

Plaintiff's Store Manager position required him to implement and administer AutoZone

United States District Court
Northern District of California

policies and procedures related to major store activities.  (Decl. of Venustiano Ochoa, "Ochoa Decl.," Dkt. No. 52-3 ¶ 6.)  Store Managers are responsible for achieving store objectives and budgets, maintaining store standards and appearance, training and disciplining employees and implementing loss prevention policies. *Id.*  Store Managers are also responsible for ensuring that employees accurately record all hours worked. *Id.*  At the time of Plaintiff's employment, AutoZone used the "SMS" timekeeping system, which required employees to clock in and out of the SMS system immediately before and after each shift and when taking lunch breaks.  (Ochoa Decl. ¶ 11.)  Store-level employees, including Store Managers, are hourly, non-exempt employees. (Decl. of Sheri Lemond, "Lemond Decl.," Dkt. No. 52-4 ¶ 4.)  Store Managers are responsible to ensure that all employee time records are accurate before submitting them to payroll.  (Ochoa Decl. ¶ 13.)  Store Managers are responsible for printing, reviewing, and having each employee review and sign a time card reflecting the employee's weekly time punches before the end of each weekly pay period. (Ochoa Decl. ¶ 14.)  It is considered a falsification of time records for an employee to sign a time card that does not accurately reflect his or her work hours. (*Id.*; *See* "Corrective Action," AutoZone Store Handbook and Code of Conduct, Lemond Decl., Ex. 9 at D00916.)  A Store Manager's failure to recognize inaccuracies in his or her own time card is grounds for termination. (Ochoa Decl. ¶ 14.)

District Manager Hughes, who is Caucasian, continued to supervise Plaintiff for approximately two years after his transfer to Store No. 5229.  (Alsabur Dep. 86:9-10.)  Plaintiff has no complaints about Hughes' management.  (Alsabur Dep. 87:6-17.)

As Store Manager of Store No. 5229, Plaintiff's annual performance appraisal for 2009 was "expectations not consistently met" for failing loss prevention audits, for unacceptable employee turnover, and for failure to complete inventory management on a consistent basis. (2009 Appraisal, Weeks Decl., Ex. 15 ¶ 5; *see* Alsabur Dep. 90:12-23.)  The performance appraisal, issued by Hughes on August 16, 2009, stated that "you have struggled all year with following directions from me and the Regional Staff, you have had to be constantly reminded and given Corrective Actions due to this." (2009 Appraisal; *see* Alsabur Dep. 90:12-91:24.)  Although Plaintiff admitted that he struggled with following directions from management that year, he

viewed the performance appraisal as one-sided and inaccurate because he "inherited" a dysfunctional store in Store No. 5229.  (Alsabur Dep. 91:8-11, 93:17-25, 97:16-98:4, 98:23-100:8, 100:21-101:4, 101:20-102:7.)

While Mr. Hughes was District Manager, Plaintiff received corrective action forms at Store No. 5229 for failing to complete an environmental audit on April 13, 2009, and for failing a loss prevention audit on December 18, 2009.  (*See* Corrective Actions, Weeks Decl. ¶ 6, Ex. 16; Alsabur Dep. 107:8-21, 110:22-111:12.)  On October 8, 2009, Plaintiff also received a corrective action for failing to monitor, properly counsel, and issue warnings to employees with attendance violations.  (10/8/09 Correction Action, Weeks Decl, Ex. 16 at D00056; Alsabur Dep. 107:24-108:17.)  To improve his performance, Plaintiff was instructed to follow the attendance policy, to print and review attendance records daily, and to issue corrective actions to employees in accordance with the attendance policy and store handbook. (10/8/09 Correction Action at D00056.)

In December 2009, James Sechler took over for Hughes as District Manager of the Oakland district.  (Alsabur Dep. 111:22-112:3; Decl. of James Sechler, "Sechler Decl.," Dkt. No. 52-2 ¶ 4.)  Sechler assumed all of Hughes' responsibilities, including oversight of Store No. 5229. (Sechler Decl. ¶ 4.)

Under District Manager Sechler's supervision, Plaintiff received a corrective action for failure to follow cash handling policy on January 14, 2010.  (1/14/10 Corrective Action, Sechler Decl., Ex. 1; Alsabur Dep. 111:17-113:15.)  On July 28, 2010, Plaintiff received a "serious violation" corrective action review for a failed loss prevention audit.  (7/28/10 Corrective Action, Sechler Decl., Ex. 2; Alsabur Dep. 115:14-116:25.)

In November 2010, District Manager Sechler received a complaint of inappropriate conduct and comments at Store No. 5229.  (Sechler Decl. ¶ 11.)  Sechler and Human Resources Manager Troy Keach commenced an investigation.  *Id.*  Interviewees reported widespread unprofessional conduct, including racial and sexual comments by various employees, alleged sexual harassment, and a rumor that Plaintiff had promoted a female associate, Maricela Silva, because they were having a romantic relationship.  *Id.*  In addition, Sechler observed low

1    employee morale, attendance policies that were not being followed, and employees, including

2    Plaintiff, who were out of dress code.  (Sechler Decl. ¶¶ 11-12.)  On November 16, 2010, Plaintiff

3    received a "serious violation" corrective action review for his failure to maintain AutoZone culture

4    and store standards.  (11/16/10 Corrective Action, Sechler Decl., Ex. 3.)  The November 2010

5    corrective action provided notice that Plaintiff would be removed as manager of Store No. 5229

6    and placed on a detailed Performance Improvement Plan ("PIP").  *Id.*

7         As a result of Plaintiff's PIP, in December 2010, he was laterally transferred from Store

8    No. 5229 to Store No. 5230, also in Oakland.  (Sechler Decl. ¶ 13; Alsabur Dep. 124:9-15,

9    124:24-125:3.)  Store No. 5230 was a smaller store with approximately 15 employees, while Store

10   No. 5229 was a hub store with approximately 40 employees.  (Sechler Decl. ¶ 14.)  Plaintiff

11   "swapped" stores with Store No. 5230 Store Manager, Anthony Harrison, who is also African

12   American.  (Decl. of Anthony Harrison, "Harrison Decl.," Dkt. No. 52-1 ¶ 3; Alsabur Dep.

13   129:14-23; Sechler Decl. ¶ 14.)  Mr. Harrison was Store Manager of Store No. 5230 from April 4,

14   2010 until December 20, 2010, when he was laterally transferred to Store No. 5229. (Harrison

15   Decl. ¶ 2.)  He worked at Store No. 5229 until March 27, 2011, when he was laterally transferred

16   to Store No. 5937 in Richmond, California, where he is currently employed. *Id.*

17        Plaintiff acknowledged receiving his PIP on January 25, 2011.  (PIP, Sechler Decl., Ex. 4;

18   Alsabur Dep. 134:16-135:11.)  The PIP specifically addressed Plaintiff's attendance issues and

19   required that he review attendance, comply with the policy himself, and ensure that his employees

20   were in full compliance with AutoZone's attendance policy on a daily basis.  (PIP at D01153.)  It

21   stated, "[i]f anyone regardless of whom they are, deviates from the [attendance] policy that

22   individual must be given corrective action on the very next day that he or she is scheduled to

23   work. . . .  As store manager you must set the example on this policy."  *Id.*  The PIP also required

24   that Plaintiff pass all loss prevention audits.  *Id.*

25        On March 18, 2011, District Manager Sechler issued Plaintiff's mid-year performance

26   appraisal for Store Nos. 5229 and 5230.  (Sechler Decl. ¶ 17.)  Plaintiff's overall performance

27   appraisal was "expectations not met" for failure to complete his "fix it" checklist, problems with

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1  organization and planning, and for failing loss prevention audits.  (Mid-Year Appraisal, Sechler

2  Decl., Ex. 5.)

3  In mid-March 2011, District Manager Venustiano ("Venus") Ochoa assumed responsibility

4  for the Oakland district when Mr. Sechler transferred to Solano County.  (Ochoa Decl. ¶ 3; Sechler

5  Decl. ¶ 5.)  As District Manager, Mr. Ochoa received the paperwork on Plaintiff's PIP.  (Ochoa

6  Decl. ¶ 7.)

7  On March 25, 2011,[1] Plaintiff met with Mr. Sechler, Regional Manager Mike Estes and

8  District Manager Ochoa at Popeye's restaurant.  (Alsabur Dep. 170:1-12; Sechler Decl. ¶ 18;

9  Ochoa Decl. ¶ 9.)  The focus of the meeting was Plaintiff's failure to implement the PIP. (Alsabur

10  Dep. 170:1-12; Sechler Decl. ¶ 18; Ochoa Decl. ¶ 9.)  Plaintiff was given two options: stay on as

11  Store Manager of Store No. 5230 under the PIP and risk termination if his performance did not

12  immediately improve, or remain at Store No. 5230 and accept a voluntary demotion to Assistant

13  Manager to receive remedial training under a new Store Manager.  (Alsabur Dep. 170:1-171:20;

14  Sechler Decl. ¶ 18.)  Plaintiff agreed to the demotion.  (Alsabur Dep. 173:16-174:5.)

15  Also on March 25, 2011, Plaintiff failed to clock out of the SMS system.  (*See* 4/6/11

16  Statement, Lemond Decl., Ex. 12 at 2.)  The demotion took effect on March 27, 2011.  (Demotion

17  Status Change, Ochoa Decl., Ex. 6.)  Store Manager Hank Baca was transferred to Store No. 5230

18  to supervise and train Plaintiff.  (Ochoa Decl. ¶ 9.)

19  On March 26, 2011, District Manager Ochoa noticed an irregularity in Plaintiff's time and

20  attendance records from the previous day.  (Ochoa Decl. ¶ 15.)  Mr. Ochoa reported Plaintiff for

21  suspected falsification of time records. (Ochoa Decl. ¶ 16.)  Human Resources Generalist Sheri

22  Lemond opened an investigation and was assisted by AutoZone employee Kathryn White, who

23  reviewed the surveillance video from Store No. 5230 against Plaintiff's time records on three dates

24  that he failed to clock out from work and failed to correct his time cards. (Lemond Decl. ¶ 6.)  The

25  surveillance video showed that on February 18, 2011, Plaintiff left work without clocking out at

26

27

28

---

[1] Plaintiff contends that the meeting took place on March 25, 2011. AutoZone contends that it occurred on March 23, 2011. For the purposes of this motion, the Court will assume that the meeting occurred on March 25, 2011.

2:26 p.m. and did not return. *Id.* Instead, he was automatically clocked out at 10:11 p.m., and accepted payment for 14 hours and 38 minutes of work. (Pl.'s Time Records, Lemond Decl., Ex. 11 at D00114.)  On March 3, 2011, Plaintiff left work without clocking out at 2:15 p.m. and did not return. (Lemond Decl. ¶ 6.)  Plaintiff was automatically clocked out at 10:50 p.m., and accepted payment for 14 hours and 36 minutes of work. (Pl.'s Time Records at D00115.)  On March 25, 2011, Plaintiff left work at 5:23 p.m. without clocking out. (Lemond Decl. ¶ 6.)  He was automatically clocked out at 10:26 p.m., and accepted payment for 12 hours and 37 minutes of work. (Pl.'s Time Records at D00113.)

On April 6, 2011, Plaintiff met with Sheri Lemond to discuss his falsification of records. (4/6/11 Statement, Lemond Decl., Ex. 12.)  During that meeting, Plaintiff admitted in his own handwriting that he failed to clock out on those three separate occasions, failed to correct the inaccurate time records and accepted payment for time he did not work.  (*Id.*; Alsabur Dep. 191:2-9.)  When asked why he did not clock out, he stated that he forgot. (4/6/11 Statement at D00060-61.)  When asked if he had anything else to add, Plaintiff acknowledged that he had "seen managers get fired all the time for this."  (4/6/11 Statement at D00061-62; Alsabur Dep. 198:1-199:1.)

On April 9, 2011, Plaintiff was allegedly terminated for falsifying time records and loss of confidence after he admitted that he left work on three separate occasions without clocking out, failed to ensure that his time records were accurate, and accepted overpayment for hours not worked. (Lemond Decl. ¶ 12.)

On or about July 30, 2011, Plaintiff filed a complaint for race discrimination with the California Department of Fair Employment and Housing ("DFEH"). (*See* DFEH complaint, Dkt. No. 19 at 4.)  Thereafter, on March 26, 2012, the DFEH issued a "right to sue" letter.

Plaintiff filed this action on January 23, 2013 in Alameda County Superior Court, which Defendant subsequently removed to federal court.  On August 8, 2013, Plaintiff filed his First Amended Complaint, alleging three causes of action: (1) Discrimination on the Basis of Race and National Origin [Gov't Code § 12940(j)]; (2) Failure to Accommodate Physical or Medical Condition [Gov't Code § 12940(a); and (3) Wrongful Termination in Violation of Public Policy.

United States District Court
Northern District of California

1    Thereafter, the Court dismissed the second cause of action, because Plaintiff failed to exhaust his

2    administrative remedies for his disability claim.

3          On May 15, 2014, Defendant filed a motion for summary judgment. (Def.'s Mot., Dkt. No.

4    52.)  On May 29, 2014, Plaintiff filed his opposition. (Pl.'s Opp'n, Dkt. No. 60.)  On June 5, 2014,

5    Defendant filed its reply. (Def.'s Reply, Dkt. No. 62.)

6                        **II.    LEGAL STANDARD**

7          A party may move for summary judgment on a "claim or defense" or "part of... a claim or

8    defense." Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when, after adequate

9    discovery, there is no genuine issue as to material facts and the moving party is entitled to

10   judgment as a matter of law. *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

11   Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,*

12   477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient

13   evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

14         A party seeking summary judgment bears the initial burden of informing the court of the

15   basis for its motion, and of identifying those portions of the pleadings and discovery responses

16   that demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Where

17   the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no

18   reasonable trier of fact could find other than for the moving party. *Southern Calif. Gas. Co. v. City*

19   *of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).

20         On an issue where the nonmoving party will bear the burden of proof at trial, it may

21   discharge its burden of production by either (1) by "produc[ing] evidence negating an essential

22   element of the nonmoving party's case" or (2) after suitable discovery "show[ing] that the

23   nonmoving party does not have enough evidence of an essential element of its claim or defense to

24   discharge its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz*

25   *Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000); *see also Celotex*, 477 U.S. 324-25.

26         Once the moving party meets its initial burden, the opposing party must then set forth

27   specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See*

28   Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 250.  "A party opposing summary judgment may not

United States District Court
Northern District of California

7

simply question the credibility of the movant to foreclose summary judgment. *Anderson,* 477 U.S. at 254. "Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (citations and quotations omitted). The non-moving party must produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NMS Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir. 2011).

### III.   DISCUSSION

#### A.   Striking portions of Plaintiff's Opposition

On May 29, 2014, Plaintiff Jowhar Alsabur filed his opposition to Defendant AutoZone's Motion for Summary Judgment. Plaintiff's opposition was accompanied by the supporting declarations of Plaintiff, Maricela Silva, and Plaintiff's counsel, Tiega-Noel Varlack, as well as numerous exhibits. (Decl. of Jowhar Alsabur, "Alsabur Decl.," Dkt. No. 65; Decl. of Maricella Silva, "Silva Decl.," Dkt. No. 60-2; Decl. of Tiega-Noel Varlack, "Varlack Decl.," Dkt. No. 60-3.) Plaintiff's opposition suffers from two notable flaws.

Plaintiff's opposition appears to include a new theory of recovery, namely that Plaintiff was subjected to harassment from his coworkers because he was African American and was retaliated against and eventually terminated because he filed a harassment complaint in November 2010. (Pl.'s Opp'n at 4, 7.) A party, however, cannot oppose summary judgment by raising grounds not in issue under the pleadings. *See Wasco Prods., Inc. v. Southwall Techs., Inc.,* 435 F.3d 989, 991 (9th Cir. 2006). While the first cause of action is listed as a violation of California Government Code § 12940(j), which is for harassment, the claim itself does not state a claim for harassment. (*See* First Am. Compl., Dkt. No. 17 ¶¶ 22, 24-29.) Rather, both the first amended

United States District Court
Northern District of California

1   complaint and Plaintiff's DFEH Charge allege that Plaintiff was terminated based on race

2   discrimination, and he has prosecuted this case as a race discrimination case.

3        Moreover, Plaintiff has only exhausted his administrative remedies as to his race

4   discrimination claim.  To successfully assert a claim under FEHA, the plaintiff must exhaust his

5   administrative remedies, and the scope of the written administrative charge defines the permissible

6   scope of any subsequent civil action. *Yurick v. Superior Court,* 209 Cal. App. 3d 1116, 1121-23

7   (1989).  Any allegations in the civil complaint that are outside of the scope of the administrative

8   charge are barred for failure to exhaust. *See Rodriguez v. Airborne Express*, 265 F.3d 890, 897

9   (9th Cir. 2001).  Plaintiff's DFEH Charge is limited to his belief that his demotion and eventual

10  termination were based on his being African American.  The DFEH Charge did not contain any

11  allegations of harassment or retaliation, which are wholly distinct from the race discrimination

12  claims Plaintiff alleges in his DFEH Charge and in his pleadings.  Additionally, exhaustion

13  requires filing a written complaint (commonly referred to as a "charge") with DFEH within one

14  year of the alleged unlawful employment discrimination, and then obtaining a notice from DFEH

15  of the right to sue. Cal. Gov't Code § 12960; *Romano v. Rockwell Int'l, Inc.,* 14 Cal. 4th 479, 492

16  (1996).  Any such action must be commenced within one year of the date the right to sue letter

17  was issued. Cal. Gov't Code § 12965(b).  At the hearing, Plaintiff's counsel conceded that the first

18  amended complaint does not allege claims for harassment and retaliation.  Instead, she seemed to

19  suggest that the evidence was relevant to the race discrimination claim.  Thus, not only are any

20  claims of harassment and retaliation not exhausted, thereby depriving the court of jurisdiction, but

21  they are fatally time barred, because the alleged harassment and retaliation occurred in 2010 and

22  2011.

23        In addition, Plaintiff generally refers to Ms. Varlack's declaration in support of certain

24  factual allegations without citing to a specific paragraph or exhibit.[2] (*See* Pl.'s Opp'n at 6.)  As a

25  result, the Court does not know to which evidence Plaintiff is referring, let alone whether it is

26  admissible, and declines to hazard a guess.  *See Carmen v. San Francisco United Sch. Dist.*, 237

27

28  [2] The Court notes that Plaintiff does not specifically cite to any of the exhibits attached to the
    Varlack Declaration.

United States District Court
Northern District of California

F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."); *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (It is not the court's task "to scour the record in search of a genuine issue of triable fact. The courts rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").  Therefore, to the extent that Plaintiff is generally citing to the Varlack Declaration or its exhibits without an adequate reference, and did not otherwise identify and provide an adequate reference at the hearing, the Court will not attempt to identify the evidence cited.  To do so was Plaintiff's burden.

### B.    The Merits of Defendant's Motion for Summary Judgment

AutoZone seeks summary judgment as to the remaining first and third causes of action for race discrimination in violation of FEHA and for wrongful termination in violation of public policy.  FEHA prohibits employers from discharging or dismissing any employee based on his/her race. Cal. Gov't Code § 12940(a).[3]

#### i.    FEHA Claim

A disparate treatment claim must be supported by direct evidence of discrimination, or may instead be evaluated under the burden-of-proof-and production analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Because state and federal laws are similar, California courts look to federal precedent when interpreting FEHA. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000). In particular, courts use the *McDonnell Douglas* burden-shifting framework and other federal employment law principles when analyzing disparate-treatment claims under FEHA. *See Schechner v. KPIX-TV*, 686 F.3d 1018, 1023 (9th Cir. 2012); *Earl v. Nielsen Media Res., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011).

Here, plaintiff has presented no direct evidence of disparate treatment. Thus, he can

---

[3] As discussed above, Plaintiff's first cause of action is listed as a violation of California Government Code § 12940(j), which is for harassment, but Plaintiff's First Amended Complaint and DFEH Charge are limited to race discrimination in violation of § 12940(a). At the hearing, Plaintiff confirmed that he was bringing a race discrimination claim.  Thus, the Court construes Plaintiff's first cause of action as a violation of § 12940(a).

1   survive summary judgment on his discrimination claims only if he first provides sufficient

2   evidence to establish a prima facie case of discrimination. If he succeeds, the burden shifts to

3   AutoZone to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. If

4   AutoZone successfully carries that burden, the ultimate burden shifts to Plaintiff to raise a triable

5   issue of material fact as to whether the proffered reasons for the adverse action are a mere pretext

6   for unlawful discrimination. *See Shelley v. Geren*, 666 F.3d 599, 607-08 (9th Cir. 2012).

7   Notwithstanding the burden-shifting, the ultimate burden of proof remains with Plaintiff to show

8   that Defendant intentionally discriminated against him based on his race. *Coleman v. Quaker Oats*

9   *Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000).

10        AutoZone argues that the court should grant summary judgment because Plaintiff cannot

11   establish a prima facie case of discrimination on the basis of race, and that even if he could, he

12   cannot establish a triable issue with regard to whether the articulated reason for his demotion and

13   eventual termination was pretextual.

14        To establish a prima facie case of discrimination through circumstantial evidence, Plaintiff

15   must show that (1) he was a member of the protected class (a person of a minority race); (2) that

16   he suffered an adverse employment action; (3) that at the time of the adverse action he was

17   satisfactorily performing his job; and (4) that he was replaced in that position by a person outside

18   the protected class who had equal or inferior qualifications, or was discharged under

19   circumstances otherwise giving rise to an inference of discrimination. *See Diaz v. Eagle Produce,*

20   *Ltd. Partnership*, 521 F.3d 1201, 1207 (9th Cir. 2008); *see also Reeves v. Sanderson Plumbing*

21   *Prods.*, Inc., 530 U.S. 133, 142 (2000); *Pottenger v. Potlach Corp.*, 329 F.3d 740, 745-46 (9th Cir.

22   2003); *Guz*, 24 Cal. 4th at 354-55.

23        The Ninth Circuit has repeatedly noted that "[t]he burden of establishing a prima facie case

24   of disparate treatment is not onerous." *See, e.g., Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir.

25   2002) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  On summary

26   judgment, the degree of proof necessary to establish a prima facie case "is minimal and does not

27   even rise to the level of a preponderance of the evidence." *Schechner v. KPIX-TV*, 686 F.3d 1018,

28   1025 (9th Cir. 2012) (citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1    Here, AutoZone argues that Plaintiff cannot establish a prima facie case of discrimination

2 because he cannot meet the third or fourth elements, that he was satisfactorily performing his job

3 and that he was replaced by someone outside the protected class with equal or lesser

4 qualifications, or that he was discharged under some other circumstances giving rise to an

5 inference of unlawful discrimination.

6                           a.   Whether Plaintiff's job performance was satisfactory

7    AutoZone contends that Plaintiff's termination was the direct result of unsatisfactory job

8 performance, because he submitted false records of his work time and accepted overpayment for

9 time that he did not work. (Def.'s Mot. at 12.)  Plaintiff admitted to his conduct claiming that he

10 forgot to clock out. (4/6/11 Statement Form, Lemond Decl., Ex. 12.)  He also stated that he did not

11 adjust his hours the next day because he "had too much on [his] plate. . . . [and] was absent

12 minded." *Id.* at D00060.  Plaintiff further stated that he was distracted because he came "to Store

13 5230. . . on a PIP.  In my mind was that if I didn't do good I would be fired. So this situation had

14 me under a lot of stress." *Id.* at D00061.

15    Further, AutoZone's business records, and Plaintiff's own admissions during his

16 deposition, show that Plaintiff received numerous warnings regarding his unsatisfactory

17 performance through corrective actions, evaluations, and a performance improvement plan. (Def.'s

18 Mot. at 12; Def.'s Exs. 1, 2, 4, 16.)  Plaintiff's previous warnings were from several managers,

19 including then-District Manager Josh Hughes, who issued Plaintiff two corrective actions in

20 connection with Store No. 5229, but whom Plaintiff does not accuse of discrimination. (Alsabur

21 Dep. 87:6-17.)  At his deposition, Plaintiff admitted that he never complained to anyone at

22 AutoZone about alleged racial bias or any other form of discrimination during his employment.

23 (Alsabur Dep. 204:18-24.)

24    In opposition, Plaintiff claims that his transfer from hub Store No. 5299 to the smaller

25 Store No. 5230, as well as his eventual demotion, were also discriminatory and the result of his

26 complaining of racial and sexual harassment in November 2010. (Pl.'s Opp'n at 4-5; Alsabur Dep.

27 131:7-10, 132:20-23.)  At his deposition, Plaintiff testified: "I feel like it was kind of

28 discriminatory for [Sechler] to swap my store, with a PIP, knowing that these are my issues that

12

1   I'm having, and put me in a store with those same issues." (Alsabur Dep. 131:7-10.) Plaintiff

2   believed that Store No. 5230 was "a worse situation" than Store No. 5229, and he was "put in

3   place to fail." (Alsabur Dep. 122:9-10, 129:1-4.)

4        Defendant, however, contends that prior to his lateral transfer to Store No. 5230, Plaintiff

5   knew that he was "not the guy for the job" at Store No. 5229, and requested store transfers from

6   both District Manager Hughes and District Manager Sechler. (Alsabur Dep. 124:17-23, 88:12-23,

7   90:6-8, 124:3-23.) Mr. Sechler transferred Plaintiff to a smaller store. (Alsabur Dep. 124:9-125:3;

8   Sechler Decl. ¶ 14.) Plaintiff did not seek to transfer to a specific store in the district. (Alsabur

9   Dep. 132:17-19.) AutoZone further asserts that all of the subordinate managers at Store No. 5229

10  received corrective action warnings as a result of the November 2010 investigation conducted by

11  AutoZone Human Resources regarding the complaints of racial and sexual harassment. (Def.'s

12  Reply at 4; November 2010 Corrective Actions, Decl. of Sheri Lemond in Support of Def.'s

13  Reply, Dkt. No. 62-1, Ex. 1.)

14       Other than Sechler transferring him and putting him on a PIP, Plaintiff alleges no other

15  discriminatory conduct by Sechler in this suit. (Alsabur Dep. 117:24-118:21, 202:21-23.)

16  AutoZone contends that Sechler was not involved in the decision to terminate Plaintiff. (Def.'s

17  Mot. at 18; Sechler Decl. ¶ 19; Lemond Decl. ¶ 13.)

18       Thus, it is undisputed that that Plaintiff was not performing his job satisfactorily. In fact,

19  he has not refuted or presented evidence that all of his performance deficiencies identified by

20  Defendant did not exist.

21       In light of the foregoing, Plaintiff's conclusory assertion that he was performing his job

22  satisfactorily is thoroughly refuted by his own admissions and testimony and the business records

23  produced by AutoZone, including Plaintiff's PIP.

24            b.   Whether Plaintiff was replaced by someone outside the protected class with
                  equal or lesser qualifications

25

26       AutoZone asserts that Plaintiff was replaced with Anthony Harrison as store manager at

27  Store No. 5229, who is also African American. (Def.'s Mot. at 11; Decl. of Anthony Harrison,

28  "Harrison Decl.," Dkt. No. 52-1 ¶ 3.) AutoZone contends that there was no discriminatory

1   animus, and that Plaintiff's termination was due to the submission of false records of his work

2   time and for accepting payment for time that he did not work. (Def.'s Mot. at 12.)

3       Plaintiff contends that Mr. Harrison is mixed race, and while he is part African American,

4   he identifies as Mexican American and speaks Spanish. (Pl.'s Opp'n at 5.)  At the hearing,

5   Plaintiff argued that Mr. Harrison, as person of mixed race, is in a different protected class than

6   Plaintiff, who is African American.  Mr. Harrison, however, testified that he is African American.

7   (Harrison Decl. ¶ 3)  But even if Mr. Harrison were mixed race, and therefore outside of Plaintiff's

8   protected class, Plaintiff does not provide any evidence that Mr. Harrison had equal or lesser

9   qualifications.  Further, as discussed above, Plaintiff requested a transfer from Store No. 5229, and

10   that transfer was achieved by "swapping" stores with Mr. Harrison, who was the Store Manager of

11   Store No. 5230.  Since Mr. Harrison was already a store manager, he was qualified to continue

12   working as a store manager.  Currently, Mr. Harrison is the Store Manager of Store No. 5937 in

13   Richmond, California, a position he has held since March 27, 2011. (Harrison Decl. ¶ 2.)

14       AutoZone also contends that Mr. Harrison's replacement, Dave McCarter, is also African

15   American, and assumed responsibility as Store Manager of hub Store No. 5229 on March 27,

16   2011, and was ultimately promoted to District Manager on February 26, 2012.  (Def.'s Mot. at 11;

17   Ochoa Decl., Ex. 7.)  McCarter is still employed with AutoZone as a District Manager.  (Def.'s

18   Mot. at 11; Ochoa Decl., Ex. 8.)  At the hearing, Plaintiff conceded Mr. McCarter's position with

19   AutoZone, but argued that he had to move to another part of the country to be promoted to District

20   Manager.  This distinction, however, is immaterial, because relocation is sometimes required to

21   obtain a promotion, especially in a large company.

22       At the hearing, Plaintiff also alleged that he was demoted to Assistant Manager, so that

23   Store Manager Hank Baca, who is Latino and allegedly a childhood friend of District Manager

24   Ochoa, could be transferred to Store No. 5230. (*See* Pl.'s Opp'n at 6.)  At his deposition, however,

25   Plaintiff admitted that he had no knowledge of the quality of Mr. Baca's work performance or how

26   it compared to his own.  (Alsabur Dep. 176:22-177:14, 185:1-13.)  Also, even if Mr. Baca was

27   transferred because he was a childhood friend of District Manager Ochoa, as opposed to because

28   he is of a different race than Plaintiff, that is not actionable under FEHA.

Also at the hearing, Plaintiff argued that his work history, including being part of the President's Club in 2007, was exemplary in regards to sales. (*See* Alsabur Decl. ¶ 7.)  The Court notes that Plaintiff's performance appraisals at the time he received the President's Club award were merely satisfactory. (*See* Alsabur Decl., Ex. A at D00039-46.)  Plaintiff's 2006 Performance Appraisal, from then-District Manager Hughes, earned him an overall rating of "Achieves Expectations," but stated that he "needs improvement" in selection and training of his employees. *Id.*at D00039-40.  At that time, Plaintiff's "development opportunities" were in the areas of "communication" and "job knowledge" as a store manager. *Id.* at D00042-43.  Similarly, Plaintiff's 2007 Performance Appraisal rated Plaintiff as "Expectations Fully Met." *Id.*at D00044. Plaintiff's development opportunities continued to be in the areas of communication and job knowledge. *Id.* at D00046.  Specifically, Plaintiff was informed that he needed "to become a more effective listener. . . . [and] you need to become better organized and manage your time better. You have missed or been late to a few conference calls for example." *Id.*  Neither of these appraisals rated Plaintiff as exceeding expectations.  While Plaintiff may have been exemplary in regards to sales, there were identified areas in which he needed to improve as a store manager. Moreover, Plaintiff received his President's Club award in 2007 based on his performance at the Richmond store, which is not indicative of his job performance at the time of his termination four years later. (Alsabur Decl. ¶ 7.)

Additionally, Plaintiff does not provide any evidence in conjunction with his argument that Mr. Baca or Mr. Harrison's work were of equal or lesser quality than his own.  Nor does Plaintiff affirmatively state whether either received the President's Club award.  Nonetheless, not receiving the award does not mean that an individual lacks the qualifications to be a store manager.  Thus, to assume that either Mr. Harrison or Mr. Baca's work was of a lesser quality or that they had lesser qualifications based exclusively on Plaintiff's conclusory statements are not reasonable inferences.

Plaintiff has not produced a scintilla of evidence that he was replaced by a Store Manager outside of his protected class with equal or lesser qualifications.  In fact, in all instances, the individuals who replaced Plaintiff were already Store Managers in other AutoZone stores and so had some managerial experience.

c. Whether AutoZone had a legitimate business reason to terminate Plaintiff even if he establishes a prima facie case

As noted above, if the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for its employment decision. *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007); *see also Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1106 (9th Cir. 2008). Once that burden is met, the inference of discrimination or retaliation raised by the prima facie case is dispelled. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993). The plaintiff must then provide evidence showing that the asserted reason was a pretext for unlawful discrimination or retaliation. *Reeves*, 530 U.S. at 146-50.  AutoZone asserts that to the extent that the court determines that Plaintiff has met the elements of the prima facie case, it has articulated a legitimate business reason for the termination– Plaintiff's submission of false time records and accepting overpayment for time he did not work– and Plaintiff has no evidence showing that the decision was motivated by some discriminatory motive.  AutoZone contends that the testimony of Sheri Lemond, James Sechler, and Venustiano Ochoa is undisputed, and establishes that Plaintiff's termination was for a legitimate, nondiscriminatory reason.

In opposition, Plaintiff contends that he "has presented evidence that AutoZone had not previously disciplined or counseled employees for failing to clock out prior to his disciplinary actions, which shows that termination for failing to clock out is pretextual" (Pl.'s Opp'n at 11.) Plaintiff's opposition does not, however, cite to any exhibits or other evidence in support of this statement.

At the hearing, the Court asked Plaintiff to identify what evidence supported his claim that the termination was pretextual, and Plaintiff cited to paragraphs 11-12 and 16-19 of the Declaration of Maricela Silva, to Defendant's responses to Plaintiff's Requests for Admission, and to the transcript of Plaintiff's California Unemployment Insurance Appeals Board hearing.  Ms. Silva's declaration provides in pertinent part:

> 11. During my tenure at AutoZone, I always worked beyond my schedule without clocking out and my understanding was that the night manager took care of clocking everyone out.
>
> 12. It was the night manager's duty to fix whatever hours were off

United States District Court
Northern District of California

because it had to be documented. I am not the first one but I know other persons at the jobs not just managers but CSM's. They failed to clock out and no one said anything or was worried because no warnings, no write ups, no verbals; because the policy was that night management would fix it.

...

16. I feel that management decided to enforce its clocking out policy against Jowhar because of his race. I am Mexican and was allowed to break attendance policies along with other non-African Americans because I am not African-American.

17. Mr. Alsabur was terminated from employment on April 9, 2011.

18. I testified before an administrative law judge that AutoZone did not enforce its attendance policy against anyone until I learned of Jowhar's termination.

19. This is a true statement.

(Silva Decl. ¶¶ 11-12, 16-19.)  At the hearing, Plaintiff asked the Court to infer from Ms. Silva's declaration that Ms. Silva, like Plaintiff, violated the company's Attendance and Work Schedule Policy by failing to clock out, did not either correct her time card or inform a manager to correct it, and collected wages that she did not earn. (*See* "Attendance and Work Schedule," AutoZone Store Handbook and Code of Conduct, Lemond Decl., Ex. 10 at D00895.)  To the contrary, Ms. Silva's declaration, only states that, during her employment at AutoZone, she violated the company's attendance policy by working beyond her schedule without clocking out because it was her "understanding that the night manager took care of clocking everyone out." (Silva Decl. ¶ 11.) Nowhere does Ms. Silva state that she engaged in the same conduct as Plaintiff—that is fail to clock out, fail to have her time card corrected, collect wages that she did not earn, and that Management knew of her conduct and failed to take an adverse action against her.  Her declaration also does not state that other managers outside of Plaintiff's protected class engaged in the same behavior by allowing false information to remain on her time cards on more than one occasion and receiving overpayment, and that AutoZone knew about it and did not take an adverse employment action. (Def.'s Reply at 11-12.)

AutoZone contends that Ms. Silva's declaration is replete with passive voice, and does not identify the evidence or the source of any official, unofficial or unwritten policy. AutoZone contends that the only potential source of any understanding of any official or unofficial policy is

1   Plaintiff, who was her supervisor and who was disciplined for not enforcing company policy.

2   AutoZone further argues that Plaintiff was not terminated for forgetting to clock out, but for his

3   actions after, which were his failure to correct his time card and his acceptance of overpayment,

4   even when he corrected a subordinate's time card and not his own. (Def.'s Reply at 11-12.)

5       The Court agrees.  Ms. Silva's declaration does not state that a member of management

6   knew that she forgot to clock out, failed to correct her time card, and accepted overpayment, nor is

7   there any evidence that any other employee did the same.  As a result, Ms. Silva's declaration,

8   including that she "was allowed to break attendance policies along with other non-African

9   Americans because [she is] not African-American," is conclusory and conclusory or speculative

10  testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact to

11  defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d

12  730, 738 (9th Cir. 1979).

13      Plaintiff's counsel then cited to Plaintiff's declaration as evidence that other members of

14  the employment team—Mr. Sechler, Mr. Ochoa, and Mr. Estes—were present at the March 25,

15  2011 meeting and may not have clocked out and may have received overpayment.  Plaintiff

16  presented no evidence that Mr. Sechler, Mr. Ochoa, and Mr. Estes are hourly, non-exempt

17  employees, let alone that they failed to clock out, failed to correct their time cards, accepted

18  overpayment, and were not disciplined by AutoZone.  This is not a reasonable inference.

19  Plaintiff's declaration also states that "AutoZone did not have a written attendance policy for

20  management. Specifically, it was commonplace for managers, as well as non-managerial

21  employees, to fail to clock out for breaks, to begin work before clocking in, and to leave work

22  without clocking out." (Alsabur Decl. ¶ 69.)  This assertion is contradicted by Plaintiff's own

23  handwritten statement during the April 6, 2011 meeting with Sheri Lemond and Venustiano

24  Ochoa, where Plaintiff admitted that he did not clock out on three occasions because he forgot.

25  (*See* 4/6/11 Statement, Lemond Decl., Ex. 12.)  When asked if Plaintiff had anything else to add,

26  he wrote "Yes. This is and was just me being absent minded and it wasn't done with intentions of

27  personal gain. I love my job and wouldn't do things like that. I've seen managers get fired all the

28  time for this." (4/6/11 Statement at 2.)  At that time, Plaintiff did not claim that there was an

United States District Court
Northern District of California

18

unwritten policy that the night manager was supposed to clock out employees. *See id.*

In fact, AutoZone's Corrective Action Policy lists falsifying company records and time card violations as prohibited misconduct and grounds for termination. (Def.'s Reply at 6; Lemond Decl., Ex. 9; Pl.'s Ex. M.)  In addition, AutoZone's attendance policy requires hourly employees who believe their time has not been recorded accurately to notify their manager immediately, so that the time can be accurately recorded. ("Attendance and Work Schedule," AutoZone Store Handbook and Code of Conduct, Lemond Decl., Ex. 10 at D00895.)  AutoZone's policy includes all hourly employees, of which Plaintiff was one. (*See* Pl.'s Timecard, Lemond Decl., Ex. 11.) The evidence is undisputed that Plaintiff was subject to AutoZone's Corrective Action policy, as he received numerous corrective action forms, so there is no material dispute regarding whether Plaintiff was responsible for accurately reporting his time.

The Court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in his favor.  To infer from Ms. Silva's declaration that she engaged in the same behavior as Plaintiff without negative repercussions based on what was provided in her declaration, however, is not a justifiable inference.

At the hearing, Plaintiff also cited to AutoZone's response to Request for Admission No. 5 as evidence that AutoZone admitted that it did not discipline other employees for engaging in the same conduct as Plaintiff.  Request No. 5 asked AutoZone to "[a]dmit that other employees in addition [to Plaintiff] left defendant's premises without clocking out." (Def.'s Resp. to Pl.'s Req. for Admis. (Set One), Decl. of Tiega-Noel Varlack, "Varlack Decl.," Ex. S at 2.)  AutoZone responded as follows:

> Defendant objects on the grounds that the request is vague, ambiguous and unintelligible as phrased. Furthermore, the request is overbroad and not reasonably tailored to lead to the discovery of admissible evidence. Subject to and without waiving said objection, and as Defendant understands the request as phrased, Defendant responds as follows: Admitted in part.

> On April 6, 2011, in his own handwriting, Plaintiff admitted that he left work without clocking out and failed to correct his timecard on February 29, 2011, March 3, 2011, and March 25, 2011. Plaintiff also admitted that he adjusted the hours of another employee for an omission during the same time period, yet not his own hours; he knew that his hours were false and could result in lost payroll, but he

did nothing to correct his time records. Considering all of the circumstances and Plaintiff's management position, including his placement on a performance improvement plan and past corrective action reviews for loss prevention violations, Plaintiff was discharged for falsifying company records and loss of confidence. **If Plaintiff is asking whether any other employee in any other California store has ever left a store without clocking out, Defendant admits the request.** However, the request's use of "without clocking out" and "in addition" is inapplicable to Plaintiff. Except as expressly admitted, denied as phrased.

(Def.'s Resp. to Pl.'s Req. for Admis. at 2-3) (emphasis added.)  While AutoZone admits that other employees have failed to clock out, this response cannot be construed to mean that all employees have engaged in the same behavior as Plaintiff without suffering an adverse employment action.  In fact, AutoZone's Store Handbook anticipates employees forgetting to clock out by requiring that they correct their time cards before the end of the pay period. (*See* "Attendance and Work Schedule," Lemond Decl., Ex. 10 at D00895.)  Nowhere in AutoZone's responses to Plaintiff's requests for admission does AutoZone admit that it failed to discipline non-African American employees for failing to correct their time cards and accepting overpayment. (*See generally* Def.'s Resp. to Pl.'s Req. for Admis., Varlack Decl., Ex. S.)

At the hearing, Plaintiff asserted that the Sheri Lemond's testimony at the Unemployment Insurance Appeals Board hearing transcript was evidence that Plaintiff was subjected to discipline when other managers that do not share Plaintiff's protected class were not. (*See* California Unemployment Insurance Appeals Board transcript, dated June 30, 2011, "UI Tr.," Varlack Decl., Ex. U.)  Ms. Lemond's testimony, however, does not support this allegation. (*See* UI Tr. at 6:12-12:9.)  To the contrary, when Plaintiff asked Ms. Lemond whether forgetting to clock out three times over 6 1/2 years was reasonable, she responded, "You know Jowhar, it's not up to me to think about these things whether it's right or wrong. You know I have to enforce the, the policy consistently and I can't make concessions for you, you know, because then it's not fair to anyone else." (UI Tr. 11:18-20.)  Plaintiff did not lay any foundation for the admission of the transcript in his opposition, nor did he even cite to it in his opposition.  To the extent that Plaintiff sought to admit the transcript as a prior inconsistent statement at the hearing, Ms. Lemond's statements are not inconsistent, and are, therefore, not admissible. *See* Fed. R. Evid. 801(d)(B) (prior consistent statements are only admissible "to rebut an express or implied charge that the declarant recently

1    fabricated it or acted from a recent improper influence or motive in so testifying.")

2          Thus, Plaintiff's articulation of the prima facie case is incomplete, as he has not shown that

3    he was performing his job satisfactorily or that he was replaced by someone outside of the

4    protected class with equal or lesser qualifications.  As discussed above, Plaintiff's performance

5    reviews showed an undisputed pattern of unsatisfactory job performance, and Plaintiff admits that

6    he failed to clock out and was paid for hours he did not work on multiple occasions.

7    Consequently, the undisputed evidence shows that AutoZone had a legitimate business reason for

8    terminating Plaintiff.  Further, in at least one instance, Plaintiff was replaced by another African

9    American male.

10          In addition, Plaintiff has not submitted any evidence of circumstances giving rise to an

11    inference of discrimination.  Namely, Plaintiff is unable to identify similarly situated employees

12    who were not terminated after engaging in the same conduct.  Further, Plaintiff has provided no

13    evidence to contradict AutoZone's evidence that it hires African Americans and promotes them.

14          Thus, the motion for summary judgment must be granted, because Plaintiff has not

15    provided specific and substantial evidence that is sufficient to create a triable issue as to whether

16    AutoZone's nondiscriminatory explanation for terminating him was pretext for discrimination. *See*

17    *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 743 (9th Cir. 2004); *Godwin v. Hunt Wesson, Inc.*, 150

18    F.3d 1217, 1222 (9th Cir. 1998).  As noted above, there is no evidence that Management treated

19    Plaintiff differently than other non-African American employees.

20                    **ii.    Wrongful Termination in Violation of Public Policy Claim**

21          Plaintiff's claim for wrongful termination in violation of public policy is based on the same

22    conduct underlying his race discrimination claim. *See* discussion *supra* Part III.A.i.  Accordingly,

23    the motion for summary judgment must be granted for the same reasons set forth above.

24          **C.    Plaintiff's Objections to Defendant's Exhibits**

25          Plaintiff objects to all but one of Defendant's 17 exhibits in their entirety "as inconsistent

26    with the Federal Rules of Civil Procedure."  (Pl.'s Opp'n at 13.)  The Court construes this

27    ambiguous statement to mean that Plaintiff is objecting that, pursuant to Federal Rules of Civil

28    Procedure 56(c)(2), "the material cited to . . . cannot be presented in a form that would be

United States District Court
Northern District of California

admissible in evidence."  Indeed, Plaintiff objects to each exhibit on five identical grounds: (1) unfairly prejudicial in that it is misleading and confuses the issue, FRE 403; (2) Hearsay, FRE 801, 802; (3) Hearsay within Hearsay, FRE 805; (4) Authentication, FRE 901; and (5) Violates Best Evidence Rule, FRE 10032.  He does not specify, however, how his conclusory, boilerplate objections relate to each of Defendant's exhibits.  Accordingly, his objections are overruled for the reasons set forth below.

### i.   Exhibits 1-8, 15, 16

Exhibits 1-8, 15, and 16 consist of corrective action review forms (Exhibits 1-3, 16), a performance improvement plan (Exhibit 4), screenshots of AutoZone's personnel management software (Exhibits 6-7), a management contact list (Exhibit 8), and performance appraisals (Exhibits 5, 15).

First, Plaintiff objects that the exhibits, under Rule 403, are "[u]nfairly prejudicial in that [they are] misleading and confus[e] the issue."  These exhibits are offered to prove that Plaintiff had a history of not performing his job satisfactorily, which goes to one of the elements of his wrongful termination claim, and serves to counter Plaintiff's claim that his termination was pretextual.  (Def.'s Mot. 7:10-12, 11:5-8, 12:13-13:19, 22:6-18.)  Such evidence is highly probative.  That the evidence hurts Plaintiff's case does not make them unduly prejudicial under Rule 403.

Second, Plaintiff seeks to exclude these exhibits on grounds that they are inadmissible pursuant to the hearsay rule.  These exhibits are business records and are, therefore, admissible. *See* Fed. R. Evid. 803(6).

Third, since these are admissible based on the business records exception to the hearsay rule, Plaintiff's hearsay and hearsay within hearsay objections are also meritless.

Fourth, Exhibits 1-5, 15, and 16 are sufficiently authenticated.  *See* Fed. R. Evid. 901. James Sechler authenticated Exhibits 1-5 by testifying that he issued them and describing how they are kept and maintained in the ordinary course of business.  (Sechler Decl. ¶¶ 9, 10, 12, 15, 17.)  Venustiano Ochoa authenticated Exhibits 6-8 because he testified that he is familiar with the personnel management software AutoZone uses and has access to company rosters in the regular

22

course of business, and based on that knowledge and his personal recollection, he identified the exhibits reflecting Plaintiff's demotion on March 27, 2011, as well as the printouts showing that Mr. McCarter's date of transfer to Store No. 5229.  (Ochoa Decl. ¶¶ 10, 20, 21.)  In addition, Plaintiff authenticated Exhibits 1, 2, 4, 15, and 16 at his deposition when he identified these documents and confirmed his signature on them.  (Alsabur Dep. 90:12-23, 102:20-103:2, 134:16-19.)

Lastly, these exhibits do not violate The Best Evidence Rule, as Plaintiff does not question the originals' authenticity nor do circumstances exist that would make it unfair to admit the duplicate.  *See* Fed. R. Evid. 1003.

### ii.    Exhibits 9-11, 14, 17

Exhibits 9-11, 14, and 17 consist of AutoZone's store handbook/code of conduct[4] (Exhibits 9, 10), timesheets (Exhibits 11, 17) and Plaintiff's signed acknowledgement of AutoZone's Code of Conduct (Exhibit 14).

First, these exhibits are not unduly prejudicial because they are offered to prove that Plaintiff was terminated for falsification of time records and that he was aware of AutoZone's termination policy.  (Def.'s Mot. at 2:9-19, 8:5-10, 9:4-28, 19:9-11, 22:10-12.)  Thus, these exhibits are offered to further Defendant's claim that it had a reasonable basis to terminate Plaintiff's employment.

Second, these exhibits are not inadmissible pursuant to the hearsay rule, because they are business records.

Third, since these exhibits are admissible based on the business records exception, Plaintiff's hearsay and hearsay within hearsay objections are also meritless.

Fourth, Defendant authenticated Exhibits 9-11, 14, and 17.  *See* Fed. R. Evid. 901.  Sheri Lemond authenticated Exhibits 9-11 because she is familiar with and has access to AutoZone's store handbook through the regular course of business and relied on the timesheets in her

---

[4] The Court notes that while Plaintiff objects to the "Corrective Action" section of AutoZone's 2011 "Store Handbook and Code of Conduct," he attached the 2012 version to his declaration in support of his opposition to Defendant's Motion.  (*See* Alsabur Decl., Ex. M.)

United States District Court
Northern District of California

United States District Court
Northern District of California

1  investigation.  (Lemond Decl. ¶¶ 3, 6; *see* "Corrective Action," 2012 Store Handbook and Code of

2  Conduct, Alsabur Decl., Ex. M.)  Plaintiff also authenticated Exhibits 14 and 17 at his deposition,

3  where he identified these documents and confirmed his signature on them.  (Alsabur Dep. 190:9-

4  14, 159:12-17.)

5  Lastly, these exhibits do not violate The Best Evidence Rule, as Plaintiff does not question

6  the originals' authenticity nor do circumstances exist that would make it unfair to admit the

7  duplicate.  *See* Fed. R. Evid. 1003.

8  ### iii.   Exhibit 13

9  Exhibit 13 contains excerpts of Plaintiff's deposition transcript.  First, Plaintiff's claim that

10  the transcript is unduly prejudicial is patently frivolous, because it is his own deposition transcript

11  testimony.

12  Second, Plaintiff's hearsay objections similarly fails, because Plaintiff's deposition is not

13  hearsay because Defendant may use it against Plaintiff, a party, for any purpose. *See* Fed. R. Civ.

14  P. 32(a)(3).

15  Third, since Plaintiff's deposition is not hearsay, his hearsay within hearsay objection is

16  meritless.

17  Fourth, Plaintiff's deposition transcript was authenticated by the certified shorthand

18  reporter, which satisfies Rule 901. (Alsabur Dep. 95-96.)

19  Lastly, the Best Evidence Rule is not implicated because this is a transcript of Plaintiff's

20  deposition so there is no original writing, recording, or photograph.

21  Accordingly, all of Plaintiff's objections to Defendant's evidence are overruled.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

### IV.    CONCLUSION

In light of the foregoing, Defendant AutoZone, Inc.'s motion for summary judgment is GRANTED as to Plaintiff's remaining claims, as he has failed to set forth sufficient facts through admissible evidence showing that there is a genuine issue of material fact for trial.  The clerk shall close the file.

IT IS SO ORDERED.

Dated: August 1, 2014

_____
KANDIS A. WESTMORE
United States Magistrate Judge